IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 04-00445-01-CR-W-FJG |
| Joshua T. Payne, | ) | |
| | ) | |
| Defendant. | ) | |

## Report and Recommendation

Pending before the Court is the MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS filed March 16, 2006 (Doc. #26) by defendant Joshua T. Payne ("Payne"). On April 11, 2006, the undersigned held an evidentiary hearing on Payne's motion. Payne was present and was represented by his counsel, Robert Glen Kuchar. The government was represented by Assistant United States Attorney David A. Barnes. At the evidentiary hearing, the government called Officer Luke Lewis of the Independence, Missouri Police Department, and Special Agent Christopher Allen of the Bureau of Alcohol, Tobacco, Firearms and Explosives. Payne testified on his own behalf as well as calling one additional witness, Kaylie Conrad. Eight exhibits were offered and received into evidence:

| | |
|---|---|
| Govt. #1 | 9 mm Ruger pistol |
| Govt. #2 | 9 mm Ruger pistol |
| Govt. #3 | Shoulder holster harness |
| Govt. #4 | Collapsible baton |
| Govt. #5 | Gun case |
| Def. #6 | Transcript of radio dispatch |
| Def. #7 | CD of radio dispatch |
| Govt. #8 | Copy of ticket issued |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

## PROPOSED FINDINGS OF FACT[1]

1. On November 28, 2005, Luke Lewis ("Officer Lewis") was a patrol officer with the Independence, Missouri Police Department. Tr. 3, 4.

2. On that date, at approximately 4:30 a.m., Officer Lewis and a fellow officer ("Officer Crow") were patrolling the area at and near 23rd Street and Sterling. Tr. 4, 5.

3. The area being patrolled by Officers Lewis and Crow was an area known for "prowlers and vandalism, stolen autos." Tr. 5.

4. Officers Lewis and Crow had just finished clearing a residential alarm call. Tr. 5.

5. After leaving the scene of the residential alarm call, Officer Lewis observed a gray four-door vehicle approaching and heading down a dead end street. Tr. 6.

6. Officer Lewis did not see any license plate on the front of the vehicle. Tr. 6.

7. Officer Lewis turned his vehicle spotlight on the vehicle as it passed and noted that one of the passengers in the vehicle "proceeded to hide their face as though they were trying to deceive." Tr. 6.

8. Officers Lewis and Crow then waited to see if the vehicle would stop at a residence on the dead end street. Tr. 6.

9. After about thirty seconds, the vehicle turned around and proceeded out of the dead end street. Tr. 6.

10. Officer Lewis followed the vehicle a short distance and then conducted a stop of the vehicle because of the apparent failure to display a front license plate. Tr. 6-7, 30.

---

[1] The findings of fact are based on the testimony that the Court found credible and that are necessary to a ruling herein. Both Payne and Kaylie Conrad (a passenger in the stopped vehicle) testified before the Court. Some of that testimony was consistent with the account of Officer Lewis, but in other respects, the testimony of Payne and Ms. Conrad was contradictory of Officer Lewis. In making credibility determinations, the Court considered (1) the demeanor of the witnesses on the stand, (2) the interest the witnesses had in the outcome of the motion, and (3) the opportunity of the witnesses to hear, observe, and recall what was said or done.

2

11. After the vehicle pulled over, Officer Lewis approached the vehicle and asked the driver for identification (which was provided orally inasmuch as the driver stated that he did not have any written identification). Tr. 7-8, 23-24.

12. The driver identified himself as Joshua Payne. Tr. 8.

13. While Officer Crow monitored the stopped vehicle and its four occupants, Officer Lewis returned to his patrol car and contacted dispatch with the Payne's identifying information. Tr. 8-9.

14. Officer Lewis testified that dispatch informed him that there was a "MULES hit" [MULES is the Missouri Uniform Law Enforcement System] on Payne and that Payne "was known to be armed and dangerous." Tr. 9, 38, 56; Def. #6; Def. #7.

15. Officer Lewis assumed that MULES hit meant that Payne "had a warrant," but Officer Lewis did not learn that Payne was the subject of a specific warrant until Payne was taken to detention. Tr. 9, 24.

16. Upon receipt of this information, Officer Lewis went back to the stopped vehicle and asked Payne to step out of the automobile so Office Lewis "could speak with him and find out a little more about why he's in this area." Tr. 10.

17. While Payne was exiting the vehicle, Officer Lewis saw a spring-loaded collapsible baton between the driver's front seat and the floorboard. Tr. 11; Govt. #4.

18. In addition, Officer Lewis also saw two fully-loaded pistol magazines just underneath the front edge of the driver's seat where Payne's feet had been in the car. Tr. 12.

19. At that point, Officer Lewis was concerned that Payne "possibly could have a weapon." Tr. 12.

20. Officer Lewis took Payne back toward the patrol car and patted him down for weapons. Tr. 13.

21. Officer Lewis also asked Payne if he was on probation and Payne stated that he was on probation. Tr. 63.

22. Officer Lewis found no weapons on Payne but did discover that Payne was wearing a shoulder holster harness. Tr. 13-14; Govt. Ex. 3.

23. Thereafter, Officer Lewis made sure that all of the occupants had exited the stopped vehicle and looked in the back seat of the automobile and saw an unlatched gun case on the floorboard. Tr. 16, 54; Govt. #5.

3

24. Officer Lewis looked inside the gun case and discovered two, loaded semiautomatic handguns. Tr. 16-18; Govt. #1; Govt. #2.

25. Officer Lewis then placed Payne under arrest. Tr. 18.

26. Payne was ultimately issued a ticket for improper display of a license plate (the stopped vehicle did have a front license plate, but it was affixed to the front grille [passenger side] with wire. Tr. 19-20.

## PROPOSED CONCLUSIONS OF LAW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses,[2] papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

---

[2] The stop of an individual in an automobile raises many of the same concerns as a search of an individual's home.

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. Undoubtedly, many find a greater sense of security and privacy in traveling in an automobile than they do in exposing themselves by pedestrian or other modes of travel. Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed. As *Terry v. Ohio* recognized, people are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles.

*Delaware v. Prouse*, 440 U.S. 648, 662-63, 99 S.Ct. 1391, 1400-01 (1979).

Case 4:05-cr-00445-DW   Document 45   Filed 07/12/06   Page 4 of 8

> No right is held more sacred, or is more carefully guarded, by the
> common law, than the right of every individual to the possession
> and control of his own person, free from all restraint or
> interference of others, unless by clear and unquestionable authority
> of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, and pertinent to the issue in this case, in *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30. However, the officer conducting such an investigatory stop must be able to articulate something more than an "inchoate and unparticularized suspicion or 'hunch.'" *Id*. at 27. Moreover, the mere fact that an officer's suspicion or hunch, in fact, was well-founded is <u>not</u> dispositive for a constitutional analysis, rather, the Fourth Amendment requires "some level of objective justification for making the stop." *INS v. Delgado*, 466 U.S. 210, 217 (1984).

The rights protected by the Fourth Amendment are implicated in this case by Officer Lewis' decision to stop the automobile being driven by Payne and thereafter to detain the occupants of the automobile. *Delaware v. Prouse*, *supra*, 440 U.S. at 653. However, it well-settled that "[a]n investigation stop does not violate the Fourth Amendment if the police have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 183 F.3d 746, 749 (8th Cir. 1999). In this case, Officer Lewis had the requisite

5

reasonable suspicion to stop a vehicle that he believed did not have a license plate properly displayed on the front of the vehicle – a violation of the traffic laws. *Compare United States v. Gregory*, 302 F.3d 805, 809 (8th Cir. 2002).

However, even though an officer may have an initial right to initiate a traffic stop, the ensuing detention of the vehicle occupants "must not be excessively intrusive in that the officer's actions must be reasonably related in scope to the circumstances justifying the initial interference." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). Nonetheless, any justifiable traffic stop "may include asking for the driver's license and registration, asking the driver to sit in the patrol car, and asking about the driver's destination and purpose." *United States v. Alegree*, 175 F.3d 648, 650 (8th Cir. 1999). Moreover, if the officer's suspicions become heightened during the course of such routine investigation, the officer may be justified in expanding the scope of the investigation. *Id*. More specifically:

> If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense.

*United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994).

In the present case, the Court concludes that Officer Lewis was justified in stopping the vehicle being driven by Payne based on the apparent absence of a front license plate. Furthermore, the Court finds that the officer was justified in asking Payne to identify himself and in radioing that information to dispatch (particularly in light of the fact that Payne did not have a driver's license or other identifying documents). After learning that there was a MULES hit on Payne and being advised that he was to be considered armed and dangerous, in the interests of

6

safety, Officer Lewis was additionally justified in asking Payne to step out the car.[3] Moreover, Officer Lewis was entitled to conduct a pat-down search of Payne and a limited search of the vehicle.

> [An] officer [is] justified in conducting a limited search for weapons once he has reasonably concluded that the person whom he had legitimately stopped might be armed and dangerous.

*Pennsylvania v. Mimms*, *supra*, 434 U.S. at 106, 111-12 (1977). Such a search could include those areas of the vehicle occupied by passengers. *Michigan v. Long*, 463 U.S. 1032, 1051 (1983) (the Fourth Amendment allows "the police to conduct an area search of the passenger compartment to uncover weapons, so long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous"). Under these facts, the Court concludes that there was no Fourth Amendment violation in the conduct and actions of Officer Lewis.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Payne's MOTION TO SUPPRESS EVIDENCE WITH SUGGESTIONS filed March 16, 2006 (Doc. #26).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this

---

[3] Officer Lewis was likely justified in making such a request even in the absence of any additional suspicion.

> [O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.

*Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977).

Case 4:05-cr-00445-DW   Document 45   Filed 07/12/06   Page 7 of 8

report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                  */s/ John T. Maughmer*
                                              **John T. Maughmer**
                                     **United States Magistrate Judge**